UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BOBBY G. R.[1]

             Plaintiff,

   v.

                                  Civil Action 3:25-cv-270
                                  Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.


## OPINION AND ORDER

Plaintiff, Bobby G. R. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 6). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**.

## I.      BACKGROUND

Plaintiff protectively filed his applications in 2022 alleging that he became disabled beginning January 1, 2011. (R. at 210–230, 231–37, 238–44.) After Plaintiff's applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

telephonic hearing on April 15, 2024, at which Plaintiff, who was represented by counsel, appeared and testified. (*Id*. at 41–63.) A vocational expert ("VE") also appeared and testified. On June 14, 2024, the ALJ issued an unfavorable determination, which became final on June 10, 2025, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 14–40, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. He contends that the ALJ's residual functional capacity ("RFC")[2] determination is not supported by substantial because the ALJ erred when assessing his subjective symptoms, particularly the pain caused by his right leg injury. (Pl.'s Statement of Errors 4, ECF No. 9.) Plaintiff also appears to contend that the ALJ erred by failing to include in his RFC an absence or time-off task limit. (*Id*. at 4–5, ECF No. 9.) The Court finds that both contentions of error lack merit.

## II.     THE ALJ'S DECISION

The ALJ issued the unfavorable determination on June 14, 2024. (R. at 14–40.) The ALJ initially determined that Plaintiff met the insured status requirements of the Social Security Act

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

through June 30, 2019. (*Id*. at 20.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his January 1, 2011 alleged onset date. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: degenerative disc diseases (DDD) of the lumbar spine; scoliosis; right leg fracture; anxiety; depression; and a substance abuse disorder. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 24.)

The ALJ then set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: (1) he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) he can stand and/or walk for about 4

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> hours and sit for about 6 hours in an 8 hour workday; (3) he can never climb ladders, ropes, or scaffolds; (4) he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; (5) he should avoid unprotected heights, dangerous machinery and commercial driving; (6) he can perform simple routine tasks but not at a production rate pace and without strict performance quotas; (7) he is limited to occasional superficial contact with coworkers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; (8) he can have no interaction with the general public; (9) he can tolerate occasional changes to a routine work setting defined as 1-2 per week.

(*Id*. at 25.) At step four, the ALJ relied on the VE's testimony to determine that Plaintiff could not perform his past relevant work. (*Id*. at 33.) The ALJ again relied on the VE's testimony at step five to determine that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of assembler, document preparer, and surveillance system monitor. (*Id*. at 35.) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 36.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.     ANALYSIS

As previously explained, Plaintiff contends that the ALJ committed reversible when assessing his subjective symptoms and by failing to include in his RFC limits for absences or time off task. (Pl.'s Statement of Errors 4–5, ECF No. 9.) Plaintiff's contentions lack merit.

### A.     Subjective Symptom Assessment

Plaintiff first contends that the ALJ erred when assessing his subjective symptoms. (*Id*. at 4.) The Court is not persuaded.

#### 1.     The Two-Step Process and Relevant Factors

When a claimant alleges disabling symptoms, an ALJ must follow a two-step process to evaluate them. *See* 20 C.F.R. §§ 404.1529, 416.929; *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25,

2017). First, an ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must consider all available evidence from medical and nonmedical sources, including medical opinions. *Id.* In addition, SSR 16-3p[4] sets forth factors that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 2017 WL 5180304, at *7–

---

[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at * 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all these factors the ALJ should show that he or she considered the relevant evidence. *Roach v. Comm'r of Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

Of note, an ALJ will consider whether a plaintiff sought medical treatment and followed prescribed care. SSR 16-3p, 2017 WL 5180304, at *9. Attempts to obtain or follow prescribed treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* at *9–10. But an ALJ may draw an adverse inference from a plaintiff's failure to seek or follow treatment only if he or she both considers and explains the plaintiff's possible reasons for that failure. *Id.* at *10; *Dooley,* 656 F. App'x at 119 (6th Cir. 2016) (noting that an ALJ must consider the claimant's reasons before inferring that a lack of treatment undermines the claim).

An ALJ need only discuss those factors that are pertinent based upon the evidence in the record. SSR 16-3p, 2017 WL 5180304 at, *7–8. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10; *cf. Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

### 2. The ALJ's Assessment

The Court finds no reversible error in the ALJ's subjective symptom assessment. The ALJ began by setting forth the two-part process described above and identifying the relevant

factors to be considered. (R. at 26, 28.) He then summarized Plaintiff's subjective symptoms

before determining that he could not fully credit them. The ALJ wrote as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id*. at 28.)

The ALJ also specifically addressed Plaintiff's statements about the impact of his right

leg pain as follows:

> Regarding claimant's ability to stand or walk, in the functional statement, he indicates he can walk a block and only needs a 10 minute rest (4E at 7). At the consultative examination discussed below, he stated he can stand or walk for 10 to 15 minutes with the assistance of a cane (11F). At the hearing he states he can only stand 10 minutes and sit 15 minutes (Hearing Transcript). He states that he uses a cane most of the time. The medical records are devoid of any significant physical change in circumstances that would support such a change from March 2022 to April of 2024 (1F-11F; 3A/4A and 5A/7A). He indicates that he that he is prescribed a cane but the medical record has no reference to an ongoing prescription. The only noted use of a walker was back in 2019 while healing after a motor vehicle accident and right patella fracture (3F at 80-87). The examination by Dr. Vitol's set forth below supports the ability of claimant to function at the exertional level of light and does not indicate that he requires the use of a cane (11F). Additionally, an exertional level of light work provides an opportunity for claimant to shift and move around from standing, walking, and sitting. However, claimant can also do sedentary work that requires mostly sitting. Upon questioning by claimant's representative, claimant indicated that he needed to elevate his knee to help reduce pain (Hearing Transcript). He clarified that it was not due to any form of swelling or edema, and the medical records support no edema (Hearing Transcript and 1F-11F). No doctor in the medical file indicate a need for claimant to elevate an extremity in any manner (1F-11F).

(*Id*. at 29.) The ALJ then reiterated his assessment of Plaintiff's subjective statements about his

physical symptoms as follows:

> Overall the claimant's testimony as to the severity of his conditions is not consistent with the medical file. Dr. Vitol's physical examination and testing does support that claimant has moderate scoliosis but only mild degenerative disc disease at the

8

> cervical and lumbar level. His examination and opinion, along with the findings of the reviewing physicians support an exertional level of light in this case. Regarding the use of cane, it is not consistently reported in medical file and as discussed below, the vocational expert testified that cane use would only limit the claimant to a sedentary exertional level.

(*Id*. at 30.) As this detailed, multipart discussion demonstrates, the ALJ determined that Plaintiff's statements about the disabling impacts of his right leg pain were unpersuasive because they were inconsistent with objective evidence and opinion evidence.

First, the ALJ determined that Plaintiff's statements were unpersuasive because they were inconsistent with the "medical file" (*i.e.*, objective evidence). (*Id*. at 29.) That consideration was proper. *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304, at *3 (6th Cir. Mar. 15, 2023) (explaining that "[a]n ALJ must consider how closely a claimant's self-reported symptoms line up with objective medical evidence and other evidence in the record.") *See also*, SSR 16-3p, 2017 WL 5180304, at *5 (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . .").

The ALS's reliance on objective evidence was also substantially supported by the record. The ALJ noted that Plaintiff's statements about his use of a cane changed over time. (R. at 29.) In March 2022, Plaintiff did not report that he used a cane when completing a function report. (*Id*. at 26, 291.) In February 2023, however, he told a consultative examiner that he could not walk without one. (*Id*. at 993.) At the April 15, 2024 hearing, Plaintiff testified that he used a cane "most of the time" and that it had been prescribed to him in 2011. (*Id*. at 50, 52.) Yet, as the ALJ explained, the record does not contain an ongoing prescription for a cane.

Instead, and as the ALJ also explained, the record reflects that Plaintiff was instructed to use a front-wheel walker after his right knee was fractured in a February 2019 motor vehicle

9

accident. (*Id*. at 686, 693.) At discharge, however, he was instructed to instead use a crutch. (*Id*. at 708.) When Plaintiff fractured his right foot in June 2020, he reported only intermittent use of crutches. (*Id*. at 650.) Plaintiff did not report using a cane at that time.

The ALJ also explained that the medical records did not show a significant change in Plaintiff's physical circumstances that would have supported a need to increasingly rely on a cane. (*Id*. at 29.) Substantial evidence supports that explanation. Following his June 2020 right foot injury, Plaintiff's lower extremity examination results were regularly benign. In October 2021, Plaintiff demonstrated normal strength and range of motion in all extremities and could lift his bilateral lower extremities off a bed without difficulty. (*Id*. at 612, 613, 634, 643.) He had no joint pain or arthralgias and his extremities were supple and non-tender. (*Id*. at 616, 622, 634.) He also scored 5/5 on strength tests of his hip flexors, knee extensors, knee flexors, and ankle dorsiflexion. (*Id*. at 640.) During an August 2022 examination, Plaintiff's extremities were found to be normal. (*Id*. at 801.)  In August 2023, a provider wrote that Plaintiff's gait was steady. (*Id*. at 835.) Plaintiff also had no tenderness in his extremities during an October 2023 examination. (*Id*. at 883.)

Similarly, the ALJ explained that Plaintiff's testimony about needing to elevate his right leg to reduce pain was inconsistent with objective evidence because no doctor ever indicated that he needed to elevate his legs. (*Id*. at 29.) And indeed, the Court cannot locate evidence that a medical provider ever advised Plaintiff to do so. Moreover, the ALJ explained that the record did not show that Plaintiff experienced edema in his legs. (*Id*.) Substantial evidence also supports that explanation—providers routinely found that Plaintiff had no edema. (*Id*. at 489, 467, 461, 673, 648, 612, 615, 623, 630, 639, 634, 643, 801, 883.)

The ALJ also determined that Plaintiff's statements about the disabling impacts of his right leg pain were unpersuasive because they were inconsistent with opinion evidence. Specifically, the ALJ explained that the consultative examiner opined that Plaintiff was capable of light work, which requires standing or walking for up to six hours in an eight-hour workday. (*Id*. at 29.) The ALJ also explained that the consultative examiner did not indicate that Plaintiff required a cane. (*Id*. at 29.) That accurately reflects the consultative examiner's findings, which the ALJ found to be at least partly persuasive. (*Id*. at 995, 30–31.)[5]

In sum, the ALJ provided a detailed and supported explanation for his assessment of Plaintiff's subjective symptoms including that Plaintiff's disabling allegations about his leg pain were inconsistent with objective and opinion evidence. Plaintiff's first contention of error is, therefore, not well taken.

**B.      Absences / Time-Off-Task Limits**

Plaintiff also contends that the ALJ erred by failing to "fully consider" the VE's testimony about the work-preclusive effects of a fifteen percent time-off task limit and a limit for being absent three days a month. (Pl.'s Statement of Errors 4–5, ECF No. 9.) This contention also lacks merit.

Plaintiff appears to contend that the testimony that the VE relied on was elicited in response to a hypothetical question that inaccurately portrayed his limits because it did not include a time-off-task or absence limit. (*Id*.) In essence, he argues that the ALJ should have included such a limit in his RFC. (*Id*.) But Plaintiff does not cite any objective medical evidence,

---

[5] The consultative examiner opined that Plaintiff was capable of light work. The ALJ found this opinion only partly persuasive, apparently, because he determined that Plaintiff was more limited to a range of light work. (R. at 30–31.) In any event, Plaintiff does not challenge the ALJ's evaluation of the consultative examiner's opinion.

including any medical opinions or administrative findings, demonstrating that additional restrictions for being off task or absent were warranted. *Stephanie R. v. Comm'r of Soc. Sec.*, No. 3:23-CV-313, 2024 WL 1615154, at *5 (S.D. Ohio Apr. 15, 2024) (finding ALJ did not err by failing to include in a plaintiff's RFC a time-off-task or absence limit due to her pain; no doctor endorsed or opined such a limit and ALJ did not ignore the plaintiff's subjective reports).

Nor does Plaintiff explain why his alleged limitations were more severe than those assessed by the ALJ. When assessing Plaintiff's RFC, the ALJ considered objective evidence, medical opinions, and prior administrative findings. (R. at 28–31.) The ALJ also considered Plaintiff's subjective symptoms but did not fully credit them because, as discussed, the record evidence did not support the severity, intensity, or frequency of the limitations he alleged. (*Id.* at 26–31.) On this record, Plaintiff has not met his burden of demonstrating that the RFC assessed by the ALJ was not supported by substantial evidence. *Miller v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-506, 2021 WL 4745430, at *3 (S.D. Ohio Oct. 12, 2021), *adopted and aff'd,* 2021 WL 5003452 (S.D. Ohio Oct. 27, 2021) (finding ALJ did not err by failing to include a time-off-task or absence limit in an RFC; ALJ was not required to rely on the plaintiff's subjective complaint about needing such a limit where the ALJ's subjective symptom assessment was explained and supported by the record). Consequently, this contention of error is not well taken.

## V.    CONCLUSION

For all these reasons, the Court finds that the ALJ did not err when assessing Plaintiff's subjective symptoms or by failing to include in his RFC an absence or time-off task limit. The Court, therefore, **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE